IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| KENNETH NEWTON, | ) | |
|---|---|---|
| Petitioner, | ) | |
| | ) | Civil No. 1:18-cv-818 |
| v. | ) | |
| | ) | Criminal No. 1:16-cr-253 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION

At issue in this 28 U.S.C. § 2255 petition for a writ of habeas corpus is whether petitioner, Kenneth Newton, who pled guilty to a single count of conspiracy to commit wire fraud, is entitled to issuance of a writ on the ground that he received ineffective assistance of counsel, in violation of the Sixth Amendment of the Constitution. Specifically, Newton alleges that his appointed counsel erroneously advised him of the legal standard governing the possibility of withdrawing his guilty plea. Newton also complains that counsel misrepresented the terms of the plea agreement and refused Newton's request to withdraw his guilty plea prior to sentencing, although Newton does not explicitly base his claim for habeas on these complaints.

Newton's habeas petition has been fully briefed and argued, and the matter is now ripe for disposition. For the reasons that follow, Newton's habeas petition must be denied.

### I.

Newton was indicted on charges of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; aiding and assisting in the preparation of false tax returns in violation of 26 U.S.C. § 7206(2); and fraud and misuse of visas, permits, and other documents in violation of 18 U.S.C. § 1546 on November 10, 2016. Shortly thereafter, Newton was arrested, and competent,

1

experienced counsel was appointed to represent him.

Newton contends that, while he was meeting with counsel about a week before the scheduled trial, counsel informed him that he would get about a year of home confinement if he pled guilty to count I of the indictment. Newton subsequently pled guilty on August 25, 2017 to count I, conspiracy to commit wire fraud. According to Newton, counsel then informed Newton that she had made a mistake in guidelines calculations and he was actually subject to a higher sentencing guideline range. Newton alleges that, several days after the August 25, 2017 hearing at which he pled guilty, he met with counsel and requested that she file a motion to withdraw his guilty plea. Counsel allegedly informed Newton that "at that point, [Newton] could not withdraw his plea save for a 'fair and just reason.'"[1] Following the preparation of a presentence investigation report, Newton was committed to the custody of the United States Bureau of Prisons for a term of twenty-two months. Newton now contends that counsel's advice regarding Newton's ability to withdraw his guilty plea prior to sentencing was incorrect and constitutes ineffective assistance of counsel because, Newton erroneously contends, the court did not find the factual basis on which Newton's plea was based or adjudicate him guilty until Newton's sentencing on November 30, 2017.

## II.

A federal prisoner may seek habeas under 28 U.S.C. § 2255 where (i) his "sentence was imposed in violation of the Constitution or laws of the United States," (ii) "the court was without jurisdiction to impose such sentence," (iii) "the sentence was in excess of the maximum allowed

---

[1] Elsewhere in his petition, Newton alleges that during this meeting, counsel "told Mr. Newton that he could not withdraw his plea and that he did not have one that would satisfy the Court." Pet. 6. This sentence plainly contains an error. Newton likely intended to repeat his allegation that counsel told Newton he could not withdraw his guilty plea save a fair and just reason. However, for the sake of thoroughness, the allegation that counsel told Newton he could not withdraw his guilty plea for any reason is also addressed below.

2

by law," or (iv) the sentence "is otherwise subject to collateral attack." Where, as here, a petitioner seeks habeas on the ground that his sentence was imposed in violation of the Sixth Amendment right to effective assistance of counsel, the petitioner must satisfy both the performance and prejudice prongs of *Strickland v. Washington*, 466 U.S. 688 (1984). Specifically, a petitioner must establish both that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 694. When the alleged error is that counsel erroneously advised the petitioner regarding the possibility of withdrawing his guilty plea prior to sentencing, the prejudice prong requires establishing a reasonable probability that, but for counsel's errors, the petitioner would have successfully withdrawn his guilty plea. *See, e.g., Booker v. Clarke*, 2016 WL 4718951, at *12 (E.D. Va. Sept. 8, 2016). Pursuant to Rule 11(d)(1), Fed. R. Crim. P., a defendant may withdraw his guilty plea prior to the court's acceptance of the plea "for any reason or no reason." However, once the court accepts the plea, but prior to sentencing, the defendant may withdraw his guilty plea only if (i) the court rejects the plea agreement or (ii) "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2).

A habeas petitioner who alleges ineffective assistance of counsel following a guilty plea entered during a properly conducted Rule 11 plea colloquy must also overcome the "formidable barrier" created by his sworn statements during that proceeding. *United States v. White*, 366 F.3d 291, 295–96 (4th Cir. 2004) (citation omitted). As the Fourth Circuit has explained, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Attorney General of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992). As such, a habeas petitioner's sworn statements may compel dismissal of

3

his habeas petition.

The Fourth Circuit has clearly delineated the framework district courts must follow when evaluating habeas petitions filed by petitioners who have pled guilty. Specifically, when presented with a claim of ineffective assistance of counsel following a guilty plea, "a court must determine 'whether [the petitioner's] allegations, when viewed against the record of the [Rule 11] plea hearing, were so palpably incredible, so patently frivolous or false as to warrant summary dismissal.'" *White*, 366 F.3d at 296–97 (quoting *Blackledge v. Allison*, 431 U.S. 63, 76 (1977)). In making this determination, the Fourth Circuit has instructed that "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks and citations omitted). As such, if the case does not present "extraordinary circumstances, . . . a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the [petitioner's] sworn statements." *Id.* at 221–22. Only when a petitioner's allegations, viewed in light of a properly conducted Rule 11 plea colloquy, are not "palpably incredible, . . . patently frivolous or false" should a case proceed to discovery. *White*, 366 F.3d at 296–97.

### III.

Application of these principles requires dismissal of Newton's habeas petition. Newton argues that he received ineffective assistance of counsel in violation of the Sixth Amendment because counsel provided him with erroneous advice regarding the possibility of withdrawing his guilty plea prior to sentencing. Newton's argument fails because counsel correctly advised Newton of the applicable rule. Even assuming, *arguendo*, that counsel's advice was erroneous,

4

Newton's claim still fails because it necessarily relies on allegations that contradict Newton's sworn statements during the plea colloquy, and thus Newton's claim is patently frivolous or false.

Newton alleges that, several days after his plea of guilty on August 25, 2017, he informed counsel that he wanted to withdraw his plea and proceed to trial. According to Newton, counsel informed him that "at that point, [he] could not withdraw his plea save for a 'fair and just reason.'" Newton contends that this advice was erroneous and constitutes ineffective assistance of counsel. Newton argues the advice was erroneous because, at the time, the factual basis for his plea had not been presented and he had yet to be adjudicated guilty. As such, Newton argues that he could withdraw his plea "for any reason or no reason" pursuant to Rule 11(d)(1), Fed. R. Crim. P. This contention is plainly contradicted by the record.

Indeed, the record conclusively establishes that the factual basis for Newton's guilty plea was established, and Newton was found guilty, during the August 25, 2017 change of plea hearing. The statement of facts was read aloud in its entirety during the hearing. Tr. 35:15–45:4, ECF No. 88. The court then confirmed with Newton that the statement of facts, which Newton had signed that day, was "true and accurate in all respects." *Id.* at 45:5–9. Following Newton's tender of a guilty plea, the court stated explicitly that it found that Newton's "plea of guilty [was] knowing and voluntary and that it [was] supported by an independent basis in fact containing each of the elements of the offense charged." *Id.* at 46:7–14. The court then stated that it "accept[ed] [Newton's] plea and . . . [ad]judge[d] [him] now guilty of Count 1 of the indictment." *Id.* at 46:15–16. In light of this explicit pronouncement at the August 25, 2017 change of plea hearing, Newton's contentions that the factual basis for his plea was not found and that he was not adjudicated guilty at that hearing are patently false.

5

Accordingly, contrary to Newton's allegation, Rule 11(d)(1), which applies "before the court accepts the plea," was not the applicable Rule when Newton asked counsel about withdrawing his plea following the August 25, 2017 change of plea hearing but prior to the November 30, 2017 sentencing. Instead, Rule 11(d)(2), which applies "after the court accepts the plea, but before it imposes sentence" was operative. Pursuant to that rule, Newton could only withdraw his plea if the court rejected the plea or Newton could "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2). Newton's petition alleges that counsel informed him that he "could not withdraw his plea save for a 'fair and just reason.'" Given that the court accepted Newton's guilty plea, counsel's advice was correct and thus cannot constitute ineffective assistance. *See Strickland*, 466 U.S. at 687–88 (requiring a "show[ing] that counsel's representation fell below an objective standard of reasonableness" to establish ineffective assistance of counsel).

Yet even assuming, *arguendo*, that counsel's advice was erroneous, Newton's petition still must be dismissed because it necessarily relies on allegations that contradict Newton's sworn statements during the plea colloquy. This additional analysis is appropriate for two reasons. First, Newton's petition contains a sentence with an error. Although the flawed sentence was likely intended to repeat the allegation that counsel advised Newton that he could not withdraw his plea save a fair and just reason, the sentence may be interpreted to allege that counsel advised Newton that he could not withdraw his plea under any circumstances.[2] Second, Newton's affidavit alleges that counsel informed him that it was "too late" to withdraw his guilty

---

[2] Specifically, Newton's petition also alleges that counsel "told Mr. Newton that he could not withdraw his plea and that he did not have one that would satisfy the Court." The sentence contains an error because it does not identify what "one" refers to. It is likely Newton intended to recite his allegation that counsel told Newton that he could not withdraw his plea save a fair and just reason. However, for the sake of thoroughness, the allegation will be addressed as written, namely that counsel informed Newton that he could not withdraw his plea, without exception.

6

plea. Although read in the context of Newton's petition, Newton likely means that counsel informed him that it was too late to withdraw his guilty plea save a fair and just reason, for the sake of thoroughness, the strongest form of this allegation—that counsel informed Newton it was "too late" and thus impossible to withdraw his guilty plea—is now addressed.

Assuming, *arguendo*, that counsel advised Newton he could not withdraw his guilty plea under any circumstances, this advice was erroneous. *See* Fed. R. Crim. P. 11(d)(2) (allowing withdrawal of a guilty plea after the court has accepted it but prior to sentencing if either of two requirements are satisfied). For Newton to succeed on his habeas petition on the basis of this erroneous advice, he must establish ineffective assistance of counsel in violation of the Sixth Amendment by satisfying both the performance and prejudice prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). Newton cannot satisfy the prejudice prong and thus his claim fails. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

To establish prejudice, Newton must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because Newton alleges counsel erred by providing him erroneous advice regarding the possibility of withdrawing his guilty plea, Newton must show a reasonable probability that he would have successfully withdrawn his guilty plea absent counsel's erroneous advice. *See, e.g., Booker v. Clarke*, 2016 WL 4718951, at *12 (E.D. Va. Sept. 8, 2016). To make this showing, Newton must establish that he had a "fair and just" reason to request withdrawal of his plea. Fed. R. Crim. P. 11(d)(2)(B). Newton cannot establish that he had such a reason because each reason

he advances for withdrawal of his guilty plea is directly contrary to his sworn statements during the plea colloquy. *See United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) ("in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false") (internal quotation marks and citations omitted).

Specifically, Newton argues in his petition that withdrawal would have been permissible because he had a defense available, namely that he lacked the requisite mens rea. Newton's petition also alleges, but does not explicitly proffer as a basis for the withdrawal of his guilty plea, that Newton believed (i) that the loss amount was inaccurate, (ii) that he was actually innocent, and (iii) that the statement of facts that he signed was incorrect. Finally, Newton complains in his affidavit that the restitution amount was increased after he entered his guilty plea and that no record exists showing that he filed fraudulent tax returns.[3] None of these proffered reasons is either true or constitutes a fair and just reason for withdrawing Newton's guilty plea pursuant to Rule 11(d)(2)(B), Fed. R. Crim. P., entitling Newton to habeas relief because each contradicts Newton's sworn statements during his plea colloquy.

First, Newton's claim that withdrawal would have been permissible because the defense that he lacked the requisite mens rea was available contradicts Newton's sworn testimony that he "opened up a bank account and asked [his co-conspirator] to file fraudulent tax returns so that [he and his co-conspirator] could make some money." Tr. 33:18-20, ECF No. 88. The following

---

[3] Newton's affidavit also alleges that "the whole plea agreement . . . has been altered of which [*sic*] [counsel] was expecting me to sign a new one in the courtroom" on November 30, 2017, when Newton appeared for sentencing. This contention is without merit. Newton's plea agreement contains a filing stamp dated August 25, 2017, and "8/25/17" is handwritten next to Newton's signature at the end of the agreement. Additionally, the plea agreement was uploaded to the Case Management/Electronic Case Files system on August 25, 2017. The docket does not contain another plea agreement.

8

exchange further underscores the conflict between Newton's sworn testimony and the lack of mens rea he now claims:

> THE DEFENDANT: [My co-conspirator was] supposed to file his tax returns and deposit them into the bank account that I opened.
> THE COURT: What tax return? The tax return for you or for other people?
> THE DEFENDANT: For other people.
> THE COURT: All right. Where those false tax returns?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And you knew that?
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 34:1–10. Second, Newton's alleged belief that the loss amount in the presentence investigation report was incorrect because it was greater than the loss amount recommended in his plea agreement directly contradicts his sworn testimony that he understood that the loss amount in the plea agreement was only a recommendation and was not binding on the court. Tr. 17:22–15, 26:6–13, ECF No. 88. Specifically, Newton swore under oath that he understood that his plea agreement contained the following term, as explained by the court:

> [Yo]u and the Government have entered into an agreement to make recommendations to the Court as to how some of the guidelines might apply to your case. That agreement binds you and it binds the Government. *It does not bind the Court. I could reach a different result as to how the guidelines might apply to your case.* . . . So what you and the Government have agreed to recommend to the Court is that . . . the loss amount, which is greater than $150,000 accurately reflects your role in this case.

*Id.* at 17:22–15, 26:6–13 (emphasis added). Third, Newton's claim that he is innocent directly contradicts his sworn testimony that he is guilty:

> THE COURT: Are you pleading guilty then, Mr. Newton, freely and willingly and voluntarily because you are in fact guilty?
> THE DEFENDANT: Yes, Your Honor.
> . . .
> THE COURT: Did you do what's charged in Count 1 of the indictment, that is, did you engage in a scheme and artifice to defraud?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Mr. Newton, tell me in your own words what you did.
> THE DEFENDANT: I allowed Mr. Tanoh, I—I opened up a bank account and asked Mr. Tanoh to file fraudulent tax returns so that we can make some money.

9

*Id.* at 26:22–25, 33:12–20. Fourth, Newton's claim that the statement of facts is incorrect directly contradicts his sworn testimony that the statement of facts, which was read aloud during the hearing in its entirety, is true and accurate in all respects:

> MS. PASCUCCI: . . . If you would like me to read the entire Statement of Facts, I would be happy to go ahead and do so.
> THE COURT: I think it would be appropriate and prudent.

*Id.* at 38:3–8. Ms. Pascucci, the prosecutor, then read the statement of facts in its entirety. Newton then confirmed that the statement of facts is true:

> THE COURT: All right. Mr. Newton, return to the podium, please, sir. Was that recitation of the facts by Ms. Pascucci, true and accurate in all respects?
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 45:5–9. Fifth, Newton's complaint that the restitution amount was increased after he entered his guilty plea directly contradicts his sworn testimony that he understood that, pursuant to the terms of his plea agreement, he would be required to make full restitution to all victims and that the amount of restitution owed to the states of Rhode Island, New York, and New Jersey and to the Commonwealth of Virginia had not yet been determined:

> THE COURT: The plea agreement continues, Mr. Newton, and provides that you understand that restitution is mandatory under the law and must be part of the sentence for the full amount of the victims' losses. . . . And you've agreed, without limitation, that the Internal Revenue Service is a victim and the restitution amount you've agreed to with the Internal Revenue Service is $651,769. The other victims are the state of Rhode Island, the state of New York, the state of New Jersey, and the Commonwealth of Virginia. And those amounts have not yet been determined. But, the plea agreement reflects that restitution is necessary as part of the sentence and you've agreed that the Court may defer imposition of restitution until after sentencing . . . .
> . . .
> THE COURT: Now, Mr. Newton, let me ask you whether those are the terms of your plea agreement as I've summarized them, as you understand it?
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 19:18–20:7, 26:6–9. Sixth, Newton's claim that there is no record of him filing fraudulent tax returns also fails to constitute a fair and just reason to withdraw his guilty plea. A conviction

10

for conspiracy to commit wire fraud, the charge to which Newton pled guilty, does not require proof that Newton filed fraudulent tax returns. *See* 18 U.S.C. § 1343.

Moreover, for the alleged absence of evidence against Newton even to potentially constitute a fair and just reason to withdraw his guilty plea, Newton would have to claim actual innocence or a failure to understand that the government must prove the offense beyond a reasonable doubt at trial. Neither of these is true. These claims directly contradict Newton's sworn testimony that (i) he is guilty of count 1, conspiracy to commit wire fraud, because he engaged in a scheme and artifice to defraud and (ii) he understands that the government would have to prove each element of the offense beyond a reasonable doubt at trial, a right he waives by pleading guilty:

> THE COURT: Do you also understand, Mr. Newton, that if you persist in a plea of not guilty, the government will be required to prove, beyond a reasonable doubt, each and every element of the offense charged against you? Do you understand that?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: What that means, with respect to Count 1, Mr. Newton, is that the government would have to prove all of the following:
> [The court proceeded to explain each element of the offense.]
> THE COURT: Now, do you understand that all of that the government would have to prove beyond a reasonable doubt with the exception of venue, if you persist in a plea of not guilty?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Did you do what's charged in Count 1 of the indictment, that is, did you engage in a scheme and artifice to defraud?
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 31:9–33:15.

Although a direct conflict between a petitioner's claim to habeas relief and his sworn statements during the plea colloquy does not require dismissal of his habeas petition when "extraordinary circumstances" exist,[4] Newton has neither alleged nor shown the existence of any

---

[4] *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

11

extraordinary circumstances here. Indeed, Newton's allegations are not akin to the situations in which the Fourth Circuit has found extraordinary circumstances. Extraordinary circumstances have been found to exist where, for example, "the petitioner introduced documentary evidence supporting his claim that he was severely ill, both physically and mentally, and uncounseled at the time of his Rule 11 colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (describing *Fontaine v. United States*, 411 U.S. 213 (1973)). Extraordinary circumstances have also been found where the government conceded that the petitioner received ineffective assistance of counsel that rendered his guilty plea involuntary and the government refused to provide a sworn affidavit supporting its claim that it did not make the petitioner an oral promise not memorialized in the plea agreement. *United States v. White*, 366 F.3d 291, 296–97 (4th Cir. 2004). No such extraordinary circumstances exist here. As such, and because each reason Newton offers for withdrawing his plea directly contradicts his sworn statements during the plea colloquy, the allegations on which Newton bases his habeas petition are patently frivolous or false and thus his petition must be dismissed. *See United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) (absent "extraordinary circumstances, . . . a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the [petitioner's] sworn statements").

Newton also complains that his sentence was more severe than he expected, as counsel incorrectly advised him regarding the punishment he would receive if he entered a guilty plea, and that counsel refused Newton's request that she withdraw his guilty plea prior to sentencing. Although Newton does not explicitly rest his habeas claim on these grounds, they will nonetheless be addressed for the sake of thoroughness. These claims do not save Newton's habeas petition, as they too necessarily rely on allegations that directly contradict Newton's

sworn statements during the plea colloquy.

Newton claims that he received a more severe sentence than he expected because he was sentenced to twenty-two months of incarceration despite counsel informing him, prior to the change of plea hearing, that his punishment would be about a year of home confinement. However, this claimed expectation directly contradicts Newton's sworn testimony that he understood the court's explanation that Newton "could be sentenced to a term of imprisonment of up to 20 years and that will be without parole." Tr. 12:7–9, 12:22–25, ECF No. 88. Newton's claim also contradicts his sworn testimony that he understood that his sentence had not yet been determined and that any estimates he received from counsel were merely estimates, not promises:

> THE COURT: . . . The plea agreement continues, Mr. Newton, and provides that you understand that the Court has the jurisdiction, that means the power, the authority to impose any sentence on you up to the 20-year statutory maximum, and that your sentence hasn't yet been determined. It's uncertain, at this time, what sentence you will actually receive. Any estimate you've received from [counsel] or from the Government or indeed from anybody, those are merely estimates. They are not promises. They are not assurances. Indeed in the plea agreement—in the plea agreement, the Government specifically notes that it makes no promise or representation to you concerning what sentence you will actually receive. So at this time, it's uncertain what sentence you will actually receive.
> . . .
> THE COURT: Now, Mr. Newton, let me ask you whether those are the terms of your plea agreement as I've summarized them, as you understand it?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Are all of the understandings, all of the arrangements that you have with the government concerning your plea of guilty contained in the plea agreement?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Has anyone made any other or different kind of promise or assurance to you of any kind whatsoever in an effort to induce you to plead guilty?
> THE DEFENDANT: No, Your Honor.

*Id.* at 17:1–17, 26:6–17. Because these sworn statements directly contradict Newton's claim that he received a greater sentence than he legitimately expected, counsel's allegedly erroneous

13

advice cannot save Newton's habeas petition from dismissal. *See United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

Nor does Newton's claim that counsel refused Newton's request that she withdraw his guilty plea prior to sentencing fare any better. This claim similarly fails because it necessarily relies on allegations that contradict Newton's sworn statements during his plea colloquy. Particularly, for Newton's habeas petition to succeed on the ground that counsel refused to withdraw Newton's guilty plea, Newton must establish ineffective assistance of counsel under the two-prong approach set forth in *Strickland v. Washington*, 466 U.S. 688 (1984). *Strickland's* prejudice prong requires Newton to establish that he had a fair and just reason to withdraw his guilty plea. *Strickland*, 466 U.S. at 694; Fed. R. Crim. P. 11(d)(2). As discussed above, the reasons Newton has proffered in support of the withdrawal of his guilty plea directly contradict Newton's sworn statements during the plea colloquy. As such, the allegations on which Newton bases his habeas petition are patently frivolous or false and thus Newton's petition must be dismissed. *See Lemaster*, 403 F.3d at 221.

## IV.

Accordingly, and for the reasons discussed above, Newton's petition for a writ of habeas corpus must be denied.

An appropriate order will issue.

Alexandria, Virginia
December 21, 2018

T. S. Ellis, III
United States District Judge